IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANJAY K. BHATNAGAR

Plaintiff,

v.

MATTHEW MEYER, WILSON B.
DAVIS, and NEW CASTLE
COUNTY

Defendants.

Civil Action No. 21-126-CFC

---

Thomas S. Neuberger, Stephen J. Neuberger, THE NEUBERGER FIRM, P.A,
Wilmington, Delaware

*Counsel for Plaintiff*

Michael P. Kelly, Hayley J. Reese, Steven P. Wood, MCCARTER & ENGLISH,
LLP, Wilmington, Delaware

*Counsel for Defendant*

## MEMORANDUM OPINION

December 20, 2021
Wilmington, Delaware

_____
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Sanjay Bhatnagar filed this action against Defendants Matthew Meyer, Wilson Davis, and New Castle County (NCC or the County). D.I. 1. In each of the Complaint's three counts Bhatnagar alleges that he was terminated from his position as an Assistant County Attorney at the County in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. D.I. 1 ¶¶ 2–3. Pending before me is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. D.I. 9.

## I.   BACKGROUND[1]

Bhatnagar began working as an Assistant County Attorney for the County's law department in June 2017. D.I. 1 ¶ 96. He is South Asian (of Indian descent) and a member of the Hindu religion. D.I. 1 ¶¶ 8–9. Meyer was at all relevant times the County Executive for NCC, and Davis was the County Attorney for NCC. D.I. 1 ¶¶ 11–12.

While working as an Assistant County Attorney, Bhatnagar received a positive employment evaluation, D.I. 1 ¶¶ 119–120, and other praise for his work,

_____

[1] When assessing the merits of a Rule 12(b)(6) motion to dismiss, I accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

*see, e.g.*, D.I. 1 ¶ 126.  On July 6, 2020, Bhatnagar sought assistance on a project from an outside law firm.  D.I. 1 ¶¶ 167–168.  On July 7, 2020, Davis sent Bhatnagar an email chastising Bhatnagar for seeking outside legal help.  D.I. 1 ¶¶ 175–176.  Bhatnagar replied that day via email and explained his reasons for seeking assistance from the law firm.  D.I. 1 ¶ 177.

On July 8, 2020, Davis fired Bhatnagar with Meyer's authorization.  D.I. 1 ¶¶ 180–181, 186.  Davis told Bhatnagar that Bhatnagar was being terminated because his July 7th email to Davis was grossly insubordinate.  D.I. 1 ¶ 183.  In a subsequent unemployment hearing, Bhatnagar was told he was fired because he breached NCC protocol when he sought assistance with his work from a law firm.  D.I. 1 ¶ 202.

In Count I of the Complaint, Bhatnagar alleges that he was denied "pre and post termination hearings" in violation of his constitutional due process rights.  D.I. 1 ¶¶ 294.  In Count II, Bhatnagar alleges that he was terminated for a minor offense of NCC policy but that three comparator attorneys who are white, Christian, and female were not terminated for similar or more serious offenses, and that his termination violated his "constitutional right to the equal protection of the law and to be free of religious, race, national origin and/or sex discrimination." D.I. 1 ¶ 339.  In Count III, Bhatnagar alleges that the decisions of Meyer and Davis

2

that resulted in his termination "were policies, practices and/or customs fairly attributable to NCC."  D.I. 1 ¶ 342.

## II.   LEGAL STANDARDS FOR STATING A CLAIM

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## III.   DISCUSSION

### A. Count I – Procedural Due Process Claim

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

"But the range of interests protected by procedural due process is not infinite." *Id.* at 570. A government employee "who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process" afforded by the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 573 (1975). Conversely, a government employee who holds his position "at the will and pleasure of" his employer has "no property interest" in his employment protected by the Fourteenth Amendment. *Bishop v. Wood*, 426 U.S. 341, 345 n.8 (1976). Whether a county employee holds a property interest in his position "must be decided by reference to state law." *Id.* at 344.

Defendants argue that Count I failed to state a cognizable due process claim because Bhatnagar was employed at will and thus did not have a protected property interest in his employment. D.I. 10 at 6. I agree.

Section 1394 of Title 9 of the Delaware Code provides that "[t]he Assistant County Attorneys shall serve at the pleasure of the County Attorney." This unambiguous characterization of the Assistant County Attorney position ends the matter. *See Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999) ("If a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language controls. If a statute is ambiguous, it should be construed in a way that will promote its apparent purpose and harmonize with other statutes.").

4

Bhatnagar has no property interest in his employment protected by the Fourteenth Amendment, *Bishop*, 426 U.S. at 345 n.8, and therefore Count I fails to state a cognizable claim.

Rather than dispute the implications of 9 Del. C. § 1394, Bhatnagar argues that this matter is governed by 9 Del. C. § 1381(3).  D.I. 12 at 6–7.  Under section 1381,

> [t]he [NCC] Office of Human Resources, managed by the Chief Human Resources Officer, who shall be qualified for the position by education, experience and training, shall perform the following functions.
>
> > (1) Divide all County officers and employees into unclassified or classified service, and assign all classified employees into position classifications, based on duties performed and responsibilities assumed;
> >
> > (2) Establish a uniform pay plan for all classified employees based on the classification of the position held;
> >
> > (3) Regulate employment and promotion according to competency and fitness, to be ascertained when possible by competitive examination and, when not, by due consideration to qualifications and record performance;
> >
> > (4) Establish tenure for all classified employees, providing for discipline, demotion and discharge for just cause only, with right of employee appeal through provisions outlined in the New Castle County Code; and
> >
> > (5) Create uniform provisions governing provisions of related sections of the New Castle County Code.

9 Del. C. § 1381.  Bhatnagar argues that, pursuant to § 1381(3), NCC developed a discipline policy with "a 'just cause' standard for all discipline and a mandatory

progressive discipline policy." D.I. 12 at 6–8 (citations omitted). It follows, he

contends, that Defendants violated his right to procedural due process when they

terminated his employment in violation of this policy. D.I. 12 at 6–7.

 Bhatnagar's argument fails for three reasons. First, the text of section

1381(3) does not authorize or require the County to develop a "just cause" standard

for Assistant County Attorneys. Second, Bhatnagar's reading of section 1381(3)

cannot be squared with section 1394's express provision that an Assistant County

Attorney "*shall* serve at the pleasure of the County Attorney." (Emphasis added.)

Third, section 1381 itself makes clear that the authority of the County's Office of

Human Resources to promulgate a "just cause" disciplinary policy comes from

section 1381(4), not section 1381(3); and section 1381(4) does not apply to

Assistant County Attorneys. Section 1381(3) says nothing about discipline.

Section 1381(4), by contrast, expressly references discipline; and it requires the

County to "provid[e] for discipline, demotion and discharge for just cause only."

But section 1381(4) expressly limits the provision of "discipline, demotion and

discharge for just cause only" only to "classified employees." Assistant County

Attorneys, however, are not classified employees. On the contrary, under New

Castle County Code § 26.01.002, "[e]mployment in the County shall be divided

into classified and unclassified service" and "unclassified service shall consist of . .

. the Council Attorney and Assistant Council Attorney(s)." Thus, the NCC itself

has excluded Assistant Council Attorneys, as unclassified employees, from the just

cause requirement for discharge of 9 Del. C. § 1381(4).

Accordingly, I will dismiss Count I.

**B. Count II – Discrimination Claim**

The crux of Bhatnagar's discrimination claim is that he was terminated

unlawfully because of his religion, race, and/or national origin and that

Defendants' false allegation of insubordination is a pretext justification.  D.I. 1 ¶¶

301, 307, 309.  When a plaintiff brings a discrimination claim under a pretext

theory, the *McDonnell Douglas* framework applies, and

> the plaintiff must first establish a prima facie case of
> discrimination by showing that (1) s/he is a member of a
> protected class; (2) s/he was qualified for the position
> s/he sought to attain or retain; (3) s/he suffered an
> adverse employment action; and (4) the action occurred
> under circumstances that could give rise to an inference
> of intentional discrimination.

*Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 802 (1973)).

At the outset, the parties dispute how to apply the *McDonnell Douglas*

framework at the pleading stage.  *See, e.g.,* D.I. 13 at 6.  Recognizing that the

*McDonnell Douglas* framework is an evidentiary standard and not a pleading

standard, the Third Circuit instructs that, "[t]o defeat a motion to dismiss, it is

sufficient to allege a prima facie case.  But it is not necessary.  The complaint need

7

only allege enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (internal alterations, quotation marks, and citations omitted). "A plaintiff need not convince the court of any of these elements at the motion to dismiss stage, but must submit more than naked assertion that he suffered an adverse employment action because of his membership in a protected class." *Blades v. Mosaic of Delaware*, 2017 WL 3868238, at *6 (D. Del. Aug. 31, 2017) (citing *Santos v. Iron Mountain Film & Sounds*, 593 F. App'x 117, 119 (3d Cir. 2014)). Therefore, arguments addressing the requirements for establishing a prima facie case or the resulting burden shifting under *McDonnell Douglas* are premature. I use the *McDonnell Douglas* framework here only for its utility in helping me sort through the allegations made in the complaint to determine if Bhatnagar has stated a plausible claim of discrimination. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016).

Defendants dispute only whether Bhatnagar can meet the pleading requirement for the fourth element in the *McDonnell Douglas* framework, arguing that he has not pleaded sufficient factual matter to establish a connection between his termination and his religion, race, and/or national origin. D.I. 10 at 10. Bhatnagar argues that he is "[a]n able and qualified Hindu, South Asian, male attorney of Indian descent" who "was terminated for a minor offense while at least

three comparable poorly performing Christian, white, native born, female attorneys were not terminated." D.I. 12 at 15.  Defendants argue that Bhatnagar's "comparators are not similarly situated" and "did not engage in the same type of misconduct cited for [Bhatnagar]'s termination." D.I. 10 at 12.

But the initial burden on the plaintiff at the motion to dismiss stage "is not intended to be onerous." *Marzano v. Comput. Sci. Corp. Inc.,* 91 F.3d 497, 508 (3d Cir. 1996) (citations omitted).  Bhatnagar need only allege "enough factual matter (taken as true) to suggest the required element." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).  And, here, he alleges that the Pension Administrator and Human Resources Benefits Coordinator expressed "frustrat[ion] with [comparator's] overall lack of cooperation and non-responsive attitude regarding critical employee issues," D.I. 1 ¶ 257 (quotation marks omitted), and that a comparator "yelled at the former Chief Financial Officer David Gregor and Department of Finance representatives" during a work meeting while comparator was an Assistant County Attorney, D.I. 1 ¶ 247.  These allegations that other Assistant County Attorneys were not terminated despite engaging in unprofessional behavior and insubordination similar to the behavior for which Bhatnagar was allegedly terminated are sufficient to state his claim.  *See Apau v. Printpack Inc.,* 722 F. Supp. 2d 489, 490–91, 493–94 (D. Del. 2010) (denying a

9

motion to dismiss because African American plaintiff "presented minimal, but sufficient factual pleadings" for his discrimination claim when he pled that he was terminated after allegedly damaging a cylinder but that two Caucasian employees who damaged cylinders in the workplace were not punished).

Defendants' argument that Bhatnagar's comparators are not similarly situated is premature for a motion to dismiss. "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). But, at the motion to dismiss stage, I "accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted." *Umland*, 542 F.3d at 64. Thus, Defendants' argument that comparators' "incompetence" was different from Bhatnagar's "insubordination" is more appropriately adjudicated at a later stage. Reading Bhatnagar's allegations in the light most favorable to him, I find that "lack of cooperation," D.I. 1 ¶ 257, or "yelling" at coworkers during a weekly meeting, D.I. 1 ¶ 247, could be considered insubordination. Thus, Bhatnagar has proffered at least one circumstance giving rise to an inference of intentional discrimination sufficient to state a claim.

10

### C. Count III – Extending Liability to the County Claim

Bhatnagar alleges that NCC is liable because all the decisions made by the individual defendants are attributable to NCC. D.I. 1 ¶ 342. When a plaintiff asserts a claim against a local governmental body, the court must analyze "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [local governmental body] is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Having found that Bhatnagar has alleged a discrimination claim under the Fourteenth Amendment, I turn now to this second question.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (original emphasis). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Defendants argue that Bhatnagar failed to allege that he was terminated pursuant to an existing and unconstitutional NCC policy. D.I. 10 at 19. In response, Bhatnagar argues (1) that "[t]he fairly pled policy, practice or custom is terminating Plaintiff's employment as an Assistant County Attorney," D.I. 12 at 19, and (2) that Meyer is a policymaker for NCC, so NCC is liable for his actions, D.I. 12 at 19.

First, Bhatnagar has pled neither a policy nor a custom because he never alleges "an official proclamation, policy, or an edict" or custom "so well-settled and permanent . . . to constitute law." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir.) (alterations and citations omitted), *cert. denied sub nom. Est. of Roman v. City of Newark, New Jersey*, 140 S. Ct. 82 (2019), *and cert. denied*, 140 S. Ct. 97 (2019). Terminating the employment of an Assistant County Attorney is neither an official policy nor a well-settled and permanent custom.

Second,

> [m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). *Pembaur* further explains that

> the County [official] may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the [official]'s decisions respecting employment would not give rise to municipal liability . . . . Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the [official] discretion to hire and fire employees and the [official] exercised that discretion in an unconstitutional manner . . . .

*Id.* at 484 n.12. This example given in *Pembaur* is exactly the issue at hand.

Bhatnagar argues that 9 Del. C. §§ 1394 and 1116 give Meyer and Davis the

authority to establish NCC policy.  D.I. 12 at 19.  But section 1394 only gives the County Attorney the discretion to hire and fire Assistant County Attorneys, not to establish the employment policy.  *See id.* ("The County Attorney shall appoint such Assistant County Attorneys as may be authorized by the County Council. The Assistant County Attorneys shall serve at the pleasure of the County Attorney.").  Similarly, section 1116 provides that the County Executive shall "[s]ee that the duties and responsibilities of the executive and administrative agencies of the County are properly performed[,]" "[s]ee that the laws of the State required to be administered by the County, the provisions of this title, ordinances, and regulations of the County are enforced[,]" and "[r]eceive and examine complaints made against any officer or employee for neglect of duty or malfeasance in office[.]"  Although Meyer and Davis may have discretion to hire and fire employees under these provisions, they are not responsible for establishing the employment policy.  Thus, liability for Meyer's and Davis's employment decisions does not extend to NCC even if they exercised their discretion unconstitutionally.  *See Pembaur*, 475 U.S. at 481–82.

## IV.   CONCLUSION

For the reasons discussed above, I will grant in part and deny in part Defendants' motion to dismiss (D.I. 9).  I will dismiss Bhatnagar's procedural due

process claim (Count I) and county liability claim (Count III) but will allow his discrimination claim (Count II) to proceed.

I also find that amending Count I and Count III would be futile. First, Bhatnagar served at the pleasure of the County Attorney. He had no protected property interest in his employment and thus cannot plead a claim for violation of procedural due process. Second, Meyer and Davis are not policymakers with respect to creating employment policies per 9 Del. C. §§ 1394, 1116. Thus, Bhatnagar cannot plead *Monell* liability for their alleged unconstitutional behavior. In light of the governing state statutes, there are no additional facts Bhatnagar could allege to plead these claims, making amendment futile. Therefore, I will dismiss Count I and Count III with prejudice.